IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION

| | |
|---|---|
| TELESFORO JIMENEZ,<br><br>    Plaintiff,<br><br>v.<br><br>EQUIFAX, INC., a Georgia<br>Corporation,<br><br>    Defendant | )<br>)<br>)<br>)<br>)  CIVIL ACTION FILE NO.<br>)<br>)  _____<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff Telesforo Jimenez ("Plaintiff"), on behalf of himself and the proposed class described below ("Class" or "Class Members"), upon personal knowledge of the facts pertaining to himself and on information and belief as to all other matters, bring this action against Equifax, Inc. ("Equifax" or "Defendant"), and allege as follows

## **SUMMARY OF CASE**

1.    On September 7, 2017, Defendant Equifax, a multi-billion-dollar corporation that sells credit information and other services to millions of consumers, financial institutions, businesses, and others, announced a cybersecurity incident during which unauthorized person or people obtained access to the personally identifiable information ("PII") of an estimated 143 million United States consumers. ("Data Breach").

2.     Equifax admitted that the PII potentially accessed in connection with the Data Breach included consumer's names, Social Security numbers, dates of birth, addresses, and driver's license numbers.

3.     Plaintiff and Class Members' entrusted their PII to Equifax.  Plaintiff and Class Members' PII is included in the information that was compromised, accessed, and/or stolen in the Data Breach. The Data Breach was due to Equifax's actions, omissions, failures, and negligence by its failing to adequately protect and safeguard the PII it collected and was entrusted to it, from various sources in connection with its operation as a consumer credit reporting agency.

4.     Equifax had the ability and duty to adequately secure and protect Plaintiff's and Class Members' PII, but failed to maintain reasonable and adequate security measures in disregard of the rights of Plaintiff and Class Members whose PII it collected.  Equifax failed to take the necessary steps to protect the PII even though it suffered prior cyberattacks and/or data breaches and was aware that the PII it and other financial institutions were attractive targets for hackers.

5.     While Equifax acknowledged that it discovered the unauthorized access to the PII on July 29, 2017, it failed to provide timely and adequate notice to the public or consumers affected by the Data Breach. It did not start providing notice until September 7, 2017.   During the more than two-month delay in providing notice of the Data Breach, Equifax executives reportedly sold more than $1.8 million of their own Equifax stock.

6.     As a result of the Data Breach, Plaintiff's and Class Members' PII was compromised and improperly exposed to criminals thereby injuring and damaging Plaintiff and Class Members by exposing them to theft of their PII, use of stolen PII for purposes of identity thefts, costs related to identifying and resolving identify theft, damages caused by their inability to use their own PII, loss of privacy, loss in the value of their PII, and other injuries and damages.

7.     The PII of Plaintiff has been accessed, viewed, and misused as a result of the Data Breach.   Plaintiff and the Class seek injunctive relief requiring Defendant to implement and maintain adequate security practices, damages, and other relief.

## PARTIES

8.     Plaintiff Telesforo Jimenez is a resident of the state of California and is a victim of the Data Breach.   Jimenez learned of the Data Breach through communications from a financial institution, which directed him to an Equifax website to obtain additional information regarding the Data Breach.  As directed by the Equifax website, Jimenez entered requested information including the last six digits of his social security number.  The Equifax website stated that, "[b]ased on the information provided, we believe that your personal information may have been impacted by this incident."

9.     Defendant Equifax, Inc. is incorporated in the State of Georgia, with its headquarters and principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.  Equifax, Inc. may be served through its Registered Agent of Service, Shawn Baldwin, 1550 Peachtree Street, NW Atlanta, GA 30309. Equifax is one of the three major credit reporting agencies in the United States and is a citizen of the State of Georgia.

## JURISDICTION AND VENUE

10.     This court has jurisdiction over this action pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  The amount in controversy in this lawsuit exceeds $5 million ($5,000,000.00), exclusive of interest and costs.  There are substantially more than 100 putative class members in the proposed class. Plaintiff, as well as some of the other proposed class members, are citizens of states other than Georgia and, therefore, have different citizenship from Defendant Equifax.

11.     This Court has personal jurisdiction over Equifax as Equifax's principal place of business is located in the state of Georgia, Equifax regularly conducts business in Georgia, has intentionally subjected itself to the jurisdiction of this Court by marketing and selling its products and services and accepting payments within the State of Georgia.   Consequently, Equifax has sufficient minimum contacts in Georgia.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as Equifax's principal place of business is located within this District.   Further, a significant portion of the acts, omissions, and events that gave rise to Plaintiff's and the proposed class members' claim took place in this District.

## FACTUAL ALLEGATIONS

13.     Defendant Equifax is one of the three leading credit reporting companies in the United States, that collect information regarding consumers to track their creditworthiness and to supply credit information regarding consumers to third-parties including financial institutions, businesses, and others.   The information collected, including a consumer's payment history on loans, mortgages, and other financial obligations, as well as information from banks, credit card issuers, lenders, and other businesses, is analyzed to develop credit scores that are necessary for consumers to enter into many commercial transactions.

14.     Equifax knew it was an attractive target for hackers and cyber-attacks as both it and some of its major competitors have suffered data breaches.

15.     Equifax knew or reasonably should have known the importance of safeguarding and adequately protecting the PII it collected and compiled on its systems and of the foreseeable consequences that would occur if their systems were breached including the impact on the individuals whose PII is compromised

and/or stolen and the significant costs in both time and money those individuals would expend to respond to the loss and/or compromise of their information.

16.    Equifax owed the Plaintiff and Class Members a duty to protect their confidential, sensitive, and valuable PII that Equifax collected and maintained on its systems.

17.    Equifax knew its data security systems were not adequate to protect the valuable, sensitive, and confidential PII they contained as it had suffered prior cyber-attacks and data breaches including one a recently as March 2017, however, it failed to take the steps necessary to implement adequate security to prevent the subsequent Data Breach.

18.    The Data Breach was a result of Equifax's inadequate approach to data security and the protection of the large volume of PII and other sensitive data it collects in the course of its business.

19.    Equifax first reported the massive Data Breach on September 7, 2017, indicating that the hackers exploited a vulnerability in one of Equifax's United States based servers, allowing the cyber intruders to retrieve "certain files." The files improperly accessed included exactly the type of PII sought by cyber criminals including consumer's names, Social Security numbers, dates of birth, addresses, and driver's license numbers.

20.    Equifax claims that it discovered that the hackers acquired unauthorized access to the PII on July 29, 2017, giving them access to the sensitive and confidential PII of 143 million United States consumers.  Equifax estimates that the PII of as many as 400,000 United Kingdom customers and 100,000 Canadian customers may have also been hacked.

21.    Equifax claims it failed to detect or discover the cyber-attack on its data until July 29, 2017, consequently the cyber-attackers had access to Plaintiff's and Class Members' sensitive and confidential PII for some period of time.

22.    While Equifax stated it discovered the Data Breach on or before July 29, 2017, it waited for more than a month before informing the public including the Plaintiff and Class Members.

23.    While Equifax still had not notified consumers regarding the breach, Equifax executives scrambled to sell portions of their Equifax stock holdings.  On August 1, 2017, Equifax Chief Financial Officer John Gamble sold shares worth approximately $950,000, Equifax's President for U.S. Information Solutions sold share worth approximately $250,000, and on August 2, 2017, Equifax's President of Workforce Solutions sold shares worth approximately $250,000.  On September 12, 2017, 36 United States Senators sent a letter to the Federal Trade Commission, the Department of Justice, and the Securities and Exchange Commission urging them to "investigate disturbing reports that senior Equifax executives sold more than $1.5 million in Equifax securities within days of a cybersecurity breach that may have compromised the personal information . . . of as many as 143 million Americans."

24.    Equifax stated that it learned the hackers obtained unauthorized access through a tool called Apache Struts, that Equifax used to support its online dispute portal designed for Equifax customers who have issues regarding their credit reports.  Equifax admitted that the U.S. Department of Homeland Security, US-CERT, "identified and disclosed" the flaw in the Apache Struts tool in March. Equifax admits that it was aware of the security flaw in the tool for a full two months before hackers obtained access to their systems precipitating the Data Breach.

25.    Even though Equifax discovered the Data Breach on July 29, 2017, Equifax admitted it waited until it observed additional suspicious activity a day later before taking the Apache Struts web application offline.

26.    By failing to take prompt and timely action to fix the flaw that precipitated the Data Breach and failing to provide prompt and timely notice to the Plaintiff, Class Members, and the public regarding the discovery of the Data Breach, Equifax precluded them from taking steps to protect themselves from further injury and damages including identity theft, fraud, and other improper use of their PII.

27.    Even when it finally notified consumers regarding the Breach, Equifax initially required those enrolling in Equifax's free credit monitoring to waive their rights to sue the company including the right to participate in a class action.  The waiver language, buried in boiler plate Terms of Use in the agreement Equifax drafted also required the consumers to agree to binding arbitration of any dispute.

28.    New York Attorney General Eric Schneiderman, who is among the state attorney generals investigating the Data Breach, contacted Equifax regarding the waivers hidden in their Terms of Use noting that, "[t]he victim of this breach shouldn't have to worry that they've waived their legal rights simply because they were trying to protect themselves.

29.    Connecticut Attorney General George Jepsen, who is participating in a probe of the Data Brach by 32 states, asked Equifax to disable its links to fee-based monitoring services until a sign-up for the free Data Breach related service ends.  Jepsen, on behalf of himself and the attorney generals   said, "We object to Equifax seemingly using its own data breach as an opportunity to sell services to breach victims . . . Equifax cannot reap benefits from confused consumers who are likely only visiting Equifax's homepage because they are concerned about whether the breach affects them and their families."

30.    Equifax is a financial institution that is subject the Gramm-Leach - Bliley Act, 15 U.S.C. § 6801 *et seq.*  ("GLBA").  Pursuant to the GLBA "each

financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." *Id.* at 15 U.S.C. § 6801(a).   The GLBA expressly obligates financial institutions such as Equifax to comply with appropriate standards relating to administrative and physical safeguards, including:

> (1) to insure the security and confidentiality of customer records and information;
>
> (2) to protect against any anticipated threats or hazards to the security or integrity of such records; and
>
> (3) to protect against unauthorized access to or use of such records or information which result in substantial harm or inconvenience to any customer.

15 U.S.C. § 6801(b).

31.    In order for financial institutions, such as Equifax, to comply with the requirements of GLBA it "shall develop, implement, and maintain a comprehensive information security program that is written in one or more readily accessible parts and contains administrative, technical, and physical safeguards that are appropriate to [their] size and complexity, the nature and scope of [their] activities, and the sensitivity of any customer information at issue. 16 C.F.R. § 314.3(a). The stated intent of the GLBA is to insure the security and confidentiality of customer information, protect against any anticipated threats or hazards to the security or integrity of such information, and to protect against unauthorized access to or use of such information that could result in substantial harm or inconvenience to any customer. *See* 16 C.F.R. § 314.3(b).

## CLASS ALLEGATIONS

32.     Plaintiff bring this class action lawsuit on behalf of himself and all others who are similarly situated.  Plaintiff seek, *inter alia*, certification pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) of a "Class" that is defined as:

> All persons in the United States who were subjected to the risk of their personal and financial data being compromised or lost as a result of the data breach that was first publicly disclosed by Equifax on or about September 7, 2017.

33.     Excluded from the Class are Equifax including its directors, officers, principals, affiliated entities, and employees, any entity or person with an ownership interest in Equifax, and any Judge(s) who are assigned to this case as well as any jurors and alternate jurors assigned to this case.

34.     The proposed Class meets the criteria for certification pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4).

35.     Plaintiff reserves the rights to amend or modify the class definition after having an opportunity to conduct discovery.

36.     <u>Numerosity.</u>  Consistent with Fed. R. Civ. P.  23(a)(1), the Class Members are so numerous and geographically dispersed that joinder of all members is impractical.  While the proposed Class would include at least the 143 million people whose PII was taken and/or compromised in the course of the Data Breach, the exact number of Class Members cannot be determined at this time. Class Members may be identified through objective means.  Class members may also be notified of the pendency of this lawsuit by recognized and established, Court approved methods to provide notice, which may include United States mail, electronic mail, internet posting, and/or published notice.

37.    Typicality.    Consistent with Fed. R. Civ. P.  23(a)(3), Plaintiff's claims are typical of the claims of the Class Members.  Plaintiff and the Class Members were injured by the same wrongful acts, omissions, and practices all committed by Equifax in the course of the Data Breach and as described herein. Plaintiff's claims arise from the same practices and course of conduct that gives rise to the Class Members' claims.

38.    Commonality.    Consistent with Fed. R. Civ. P.  23(a)(2) and (b)(3), this lawsuit involves common questions of fact and law that predominate over any questions affecting individual Class Members.  Those common questions include, but are not limited to:

   a.  Whether Equifax had a duty to protect PII;

   b.  Whether Equifax used reasonable or industry standard measures to protect the Plaintiff's and Class Members' PII and other information;

   c.  Whether Equifax knew or should have known prior to the Data Breach that its network and computer systems were vulnerable to a data breach or other cyber-attack;

   d.  Whether Equifax adequately or properly segregated its network and computer systems so as to protect PII and other data;

   e.  Whether Equifax's conduct, including their acts and omissions, was the direct and proximate cause of the Data Breach of its network and computer systems, thereby resulting in the compromise and/or disclosure of Plaintiff's and Class Members' PII;

   f.  Whether Equifax was negligent by failing to implement reasonable and adequate security procedures and practices;

g. Whether Equifax's failure to implement adequate security measures and systems allowed the cyber-attack and Data Breach to occur;

h. Whether Equifax provided adequate notice of the Data Breach;

i. Whether Equifax's conduct violated the laws as alleged in this complaint;

j. Whether Equifax's conduct constituted a deceptive trade practice under applicable law; and

k. Whether the Plaintiff and Class Members are entitled to recover damages, statutory damages, punitive damages, and other relief.

39.     <u>Adequacy.</u>  Consistent with Fed. R. Civ. P.  23(a)(4), Plaintiff will fairly and adequately represent and protect the interests of the Class Members. Plaintiff is an adequate representative of the Class in that he has no interests that are averse to or in conflict with those of the Class Members Plaintiff seeks to represent.  Plaintiff intends to vigorously prosecute this case on behalf of the Class Members and will fairly represent the Class' and Class Members' interests. Plaintiff has retained Counsel who has substantial experience and success in the prosecution of complex consumer class actions including privacy litigation and data breach.

40.     <u>Superiority.</u> Consistent with Fed. R. Civ. P.  23(b)(3), a class action is superior to any other available method for the fair and efficient adjudication of this controversy since individual joinder of all Class Members is impractical.  The expense and burden of individual litigation would make it difficult, or impossible, for the individual Class Members to redress the wrongs done to them as the damages suffered by Plaintiff and the Class are relatively small by comparison. Even if individual Class Members could afford individual lawsuits and individualized litigations, the resulting impact and cost to the court system,

including judicial resources, would be substantial. Furthermore, such individual actions would present the potential for inconsistent rulings and judgments. A class action is manageable, and will provide adjudication, as well as comprehensive supervision and management, by a single court.

41.     Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) and (c), where Equifax, through its conduct, has acted, failed to act, and/or refused to act on grounds and in a manner generally applicable to the Class and all Class Members, making injunctive relief and declaratory relief appropriate for the Class as a whole.

## COUNT ONE
## NEGLIGENCE

42.     Plaintiff incorporates the above allegations as if fully set forth herein.

43.     Equifax collected, accepted, and stored on its computer systems and elsewhere, PII collected from consumers including Plaintiff and Class Members making Equifax subject to a duty to exercise due care in the protection of the PII it collected and maintained.

44.     Equifax knew that Plaintiff's and Class Members PII was sensitive, private, and confidential and should be protected as such.

45.     In connection with its business as one of the three primary consumer credit agencies in the United States, Equifax was entrusted with confidential and sensitive PII, including credit card numbers and other financial information, from more than 800 million consumers and at least 88 million businesses worldwide.

46.     Equifax was aware that the PII was an attractive target for hackers and cyber-attacks and was required to exercise reasonable care to secure and safeguard the PII and maintain it and protect it as private and confidential.

47.     As one of the major credit reporting agencies, Equifax faced an elevated risk and threat of cyber-attack and security breaches compared to most

other types of business due to the volume and nature of the confidential and sensitive PII that it collected and maintained regarding hundreds of millions of consumers including the Plaintiff and Class Members.

48.    By accepting and storing their PII, Equifax undertook and owed a duty to Plaintiff and Class Members to exercise reasonable to secure, protect, and safeguard their sensitive and confidential information and to use commercially reasonable methods to do so.

49.    Equifax knew or should have known that given the sensitivity of the PII, its potential value to cyber criminals, and previous cyber-attacks on Equifax's systems, that it had not taken adequate measures to safeguard the private and confidential PII.

50.    Equifax had a duty to protect the sensitive and confidential PII which it maintained and should have taken adequate steps to protect and safeguard consumer's PII.

51.    Equifax had a duty to use and exercise due care with respect to the consumers' PII it collected and maintained and prevent any breach of security with respect to that information and to take all steps necessary to prevent the unauthorized disclosure and/or compromise of the PII belonging to Plaintiff and Class Members.

52.    Equifax's obligations including a duty to exercise reasonable care to detect any breach of the security of the PII it maintained that could result in the compromise, theft of, loss, or disclosure of the sensitive and confidential PII belonging to the Plaintiff and Class Members.

53.    It was foreseeable that Equifax's failures to take reasonable measures to protect and secure the sensitive and confidential PII it collected and maintained could result in the unauthorized disclosure, theft, and misuse of PII belonging to the Plaintiff and Class Members.

54.    Equifax's acts, wrongful acts, omissions, inaction, and lack of ordinary care was the direct and proximate cause of the Data Breach and is actionable as negligence, gross negligence, and negligence per se.

55.    Plaintiff and the Class Members seeks damages for their injuries arising from Equifax's negligence including compensatory damages, punitive damages, costs of suit, attorneys' fees, interest, and further and additional damages as allowed by law and this Court deems just and proper.

## COUNT TWO

## WILLFUL VIOLATION OF THE FAIR CREDIT REPORTING ACT ("FCRA")

### 15 U.S.C. § 1681 *et seq.*

56.    Plaintiff incorporate the above allegations as if fully set forth herein

57.    Plaintiff and Class Members are individuals and, therefore, are consumers entitled to the protections contained in the FCRA pursuant to 15 U.S.C. § 1681a(c).

58.    Equifax regularly engages in the assembling or evaluation of consumer credit information and other information regarding consumers for the purpose of furnishing consumer reports to third parties and used means of interstate commerce in the preparation and furnishing of such consumer reports. Equifax, therefore, is a "consumer reporting agency" for purposes of 15 U.S.C. § 1681a(f).

59.    15 U.S.C. § 1681a(d)(1) provides that a "consumer report" is any communication of "any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation personal characteristic, or mode of living . . .. "

60.    15 U.S.C. § 1681e(a) requires that "every consumer reporting agency shall maintain reasonable procedures designed to . . .  limit the furnishing of

consumer reports to the purposes listed under [15 U.S.C. § 1681b]. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify the information will be used for no other purpose." 15 U.S.C. § 1681b enumerates the only circumstance under which a consumer reporting agency may furnish a computer report. None of the circumstances enumerated in 15 U.S.C. § 1681b are applicable to the Data Breach and related disclosure of information regarding Plaintiff's and Class Members' credit worthiness, credit standing, credit capacity, character, general reputation personal characteristic, or mode of living to undisclosed persons for undisclosed purposes.

61.    Equifax provided the Plaintiff's and Class Members' information constituting consumer reports to unauthorized persons and/or entities by failing to take adequate measures and implement adequate security to prevent unauthorized disclosure of the consumer reports.

62.    Equifax willfully and/or recklessly and/or negligently violated the FCRA including 15 U.S.C. § 1681b and 15 U.S.C. § 1681e(a) by providing prohibited access to consumer reports and by failing to implement and maintain the reasonable procedures described in 15 U.S.C. § 1681b, which are designed to limit the unauthorized provision of information constituting consumer reports.

63.    Equifax's violations of the FCRA were willful and/or reckless and/or negligent as it knew or should have known that the FCRA imposed legal obligations on it with respect to data security and data breaches. Equifax acted consciously in breaching the known duties regarding data security and data breaches thereby depriving Plaintiff and Class Members of the rights and protections they were entitled to pursuant to the FCRA.

64.    Plaintiff and Class Members have been damaged by Equifax's willful and/or reckless and/or negligent failure to comply with the requirement of the

FCRA and the related unauthorized release of consumer reports relating to them and/or containing their PII.

65.    Pursuant to 15 U.S.C. § 1681n(a)(1)(A), Plaintiff and Class Members are each entitled to recover "any actual damages sustained by the consumer . . . or damages of not less than $100 and not more than $1,000 . . .." Pursuant to 15 U.S.C. § 1681n(a)(2) & (3), Plaintiff and Class Members are also entitled to recover punitive damages and reasonable attorney's fees.

**COUNT THREE**

**NEGLIGENT VIOLATION OF THE FAIR CREDIT REPORTING ACT ("FCRA")**

**15 U.S.C. § 1681 *et seq.***

66.    Plaintiff incorporate the above allegations as if fully set forth herein

67.    Equifax was negligent in failing to meet its duty to maintain reasonable procedures designed to limit the furnishing of information constituting consumer reports to the purposes listed in 15 U.S.C. § 1681b.

68.    Due to Equifax's negligent conduct, hackers were able obtain Plaintiff's and Class Members' consumer reports, including their sensitive and confidential PII, in a manner and for purposes that are not authorized or permissible pursuant to the FCRA.

69.    Equifax provided the Plaintiff's and Class Members' consumer reports to unauthorized persons and/or entities by failing to take adequate measures and implement adequate security to prevent unauthorized disclosure of the consumer reports.

70.    Plaintiff and Class Members have been damaged by Equifax's negligent failure to comply with the requirement of the FCRA and the related unauthorized release of information constituting consumer reports relating to them and/or containing their PII.

71.     The Plaintiff and Class Members are also injured and at an increased risk of experiencing the following as a direct result of the Data Breach:

a.     Money and time lost as a result of fraudulent access to and use of their financial accounts;

b.     Loss of use of and access to their financial accounts and/or credit;

c.     Money and time expended to avail themselves of assets and/or credit frozen or flagged due to misuse;

d.     Impairment of their credit scores, ability to borrow, and/or ability to obtain credit;

e.     Lowered credit scores resulting from credit inquiries following fraudulent activities;

f.     Costs and lost time from dealing with administrative consequences of the Data Breach, including by identifying, disputing, and seeking reimbursement for fraudulent activity, canceling compromised financial accounts and associated payment cards, and investigating options for credit monitoring and identity theft protection services;

g.     Money and time expended to ameliorate the consequences of the filing of fraudulent tax returns; and

h.     Continuing risks to their personal information, which remains subject to further harmful exposure and theft as long as Equifax fails to undertake appropriate, legally required steps to protect the personal information in its possession.

72.     Plaintiff and Class Members are individuals and, therefore, are consumers entitled to the protections contained in the FCRA pursuant to 15 U.S.C. § 1681a(c).

73.    Equifax regularly engages in the assembling or evaluation of consumer credit information and other information regarding consumers for the purpose of furnishing consumer reports to third parties and used means of interstate commerce in the preparation and furnishing of such consumer reports. Equifax, therefore, is a "consumer reporting agency" for purposes of 15 U.S.C. § 1681a(f).

74.    15 U.S.C. § 1681a(d)(1) provides that a "consumer report" is any communication of "any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation personal characteristic, or mode of living . . .. "

75.    15 U.S.C. § 1681e(a) requires that "every consumer reporting agency shall maintain reasonable procedures designed to . . . limit the furnishing of consumer reports to the purposes listed under [15 U.S.C. § 1681b]. These procedures shall require that prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify the information will be used for no other purpose." 15 U.S.C. § 1681b enumerates the only circumstance under which a consumer reporting agency may furnish a computer report. None of the circumstances enumerated in 15 U.S.C. § 1681b are applicable to the Data Breach and related disclosure of information regarding Plaintiff's and Class Members' credit worthiness, credit standing, credit capacity, character, general reputation personal characteristic, or mode of living to undisclosed persons for undisclosed purposes.

76.    Equifax provided information constituting the Plaintiff's and Class Members' consumer reports to unauthorized persons and/or entities by failing to take adequate measures and implement adequate security to prevent unauthorized disclosure of the consumer reports.

77.     Equifax willfully and/or recklessly and/or negligently violated the FCRA including 15 U.S.C. § 1681b and 15 U.S.C. § 1681e(a) by providing prohibited access to consumer reports and by failing to implement and maintain the reasonable procedures described in 15 U.S.C. § 1681b, which are designed to limit the unauthorized provision of consumer reports.

78.     Equifax's violations of the FCRA were willful and/or reckless and/or negligent as it knew or should have known that the FCRA imposed legal obligations on it with respect to data security and data breaches.  Equifax acted consciously in breaching the know duties regarding data security and data breaches thereby depriving Plaintiff and Class Members of the rights and protections they were entitled to pursuant to the FCRA.

79.     Plaintiff and Class Members have been damaged by Equifax's willful and/or reckless and/or negligent failure to comply with the requirement of the FCRA and the related unauthorized release of information constituting consumer reports relating to them and/or containing their PII.

80.     Pursuant to 15 U.S.C. § 1681o(a)(1), Plaintiff and Class Members are each entitled to recover "any actual damages sustained by the consumer" as a result of Equifax's failure.  Pursuant to 15 U.S.C. § 1681o(a)(2), Plaintiff and Class Members are also entitled to recover the costs of the action together with reasonable attorney's fees.

**COUNT FOUR**

**VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT ("GFBPA")**

**O.C.G.A. § 10-1-390 *et seq.***

81.     Plaintiff incorporates the above allegations as if fully set forth herein.

82.     Equifax's acts, practices, failures, and omissions that resulted in the Data Breach and injured and damaged the Plaintiff and Class Members were

directed from and emanated from Equifax's headquarters located in the State of Georgia.

83.    Equifax's acts, practices, failures, and omissions that are at issue in this lawsuit affect the people of the State of Georgia and are considered "trade" and "commerce" for purposes of the GFBA pursuant to O.C.G.A. § 10-1-392(28).

84.    Equifax knew or should have known that it had not taken adequate measure to protect and safeguard Plaintiff's and Class Members' PII maintained on its computer systems and networks and that its security systems and practices were not adequate to prevent unauthorized access from the PII, to deter hackers, cyber-criminals and other unauthorized parties, and that the risk of a data breach was likely given these failures and the nature and volume of the valuable, sensitive, and confidential PII it maintained.

85.    Equifax's failures to secure and protect consumers' PII, including the Plaintiff' and Class Members' PII, constitutes a violation of the GFBA.

86.    As described in this complaint, Equifax engaged in unfair and/or deceptive acts or practices in the course and conduct of consumer transactions that included, but are not limited to, the following, all in violation of the GFBPA:

      a.  failing to adequately safeguard and protect PII by failing to maintain adequate computer systems and networks and provide adequate data security for those computer systems and networks;

      b.  failing to provide prompt, timely, accurate, and sufficient notice of the Data Breach to the Plaintiff and Class Members and all others potentially impacted by the Data Breach;

      c.  failing to provide notice that Equifax's computer systems and networks and security practices and systems were inadequate to protect PII from cyber-attack or data breaches;

d. collecting, accepting, and maintaining sensitive and confidential PII from Plaintiff, Class Members, and others after Equifax was aware or should have been aware that Equifax's computer systems and networks and security practices and systems were inadequate to protect PII from cyber-attack or data breaches; and

e. continuing to collect and store PII and other confidential and sensitive personal information after Equifax knew or should have known of the Data Breach and before it remediated the Data Breach.

87.    Plaintiff and Class Members have been injured and suffered damages as a direct and proximate result of Equifax's violations of the GFBA.

88.    As a direct result of Equifax's violations of the GFBA, Plaintiff and Class Members are entitled to damages and injunctive relief, including, but not limited to:

a. an order that Equifax retain third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits of Equifax's systems on a periodic basis;

b. an order that Equifax retain third party security auditors and sufficient internal personnel to run automated security monitoring;

c. an order that Equifax implement systems and procedures to promptly identify unauthorized attempts to access its systems and unauthorized access to its systems or data;

d. an order that Equifax periodically conduct database scans, real-time network traffic analysis, and security checks'

e. an order that Equifax audit, test, and train their security personnel regarding any new or modified procedures;

f.  an order that Equifax conduct internal education and training informing internal security personnel how to detect, identify, and contain a breach when it occurs and what actions to take in response to such a breach; and

g.  an order that Equifax purge, delete, and destroy in a reasonable secure manner all PII and other sensitive and confidential information that is not necessary for their business and operations.

89.    Plaintiff bring this action on behalf of himself, Class Members and or the public benefit in order to promote the public's interests in the provision of truthful, accurate and fair information that will allow consumers to make informed and educated purchasing decisions.  Further, this action is brought in the interest of protecting Plaintiff, Class Members, and the members of the public from Equifax's unfair, deceptive, fraudulent, and unlawful practices, and Equifax's unfair methods of competition.

90.    Plaintiff and Class Members seek judgment against Equifax, with respect to this cause of action, for actual and consequential damages, exemplary damages and attorneys' fees pursuant to the GFBPA, costs, and such other additional relief as the Court deems just and proper.

## COUNT FIVE

## VIOLATIONS OF THE CALIFORNIA CUSTOMER RECORDS ACT
### California Civil Code § 1798.80, et seq. ("CRA")

91.    Plaintiff incorporate the above allegations as if fully set forth herein.

92.    "[T]o ensure that personal information about California residents is protected," the California Legislature enacted the CRA, which requires that any business that "owns, licenses, or maintains personal information about a California resident shall implement and maintain reasonable security procedures and practices

appropriate to the nature of the information, to protect the personal information from unauthorized access, destruction, use, modification, or disclosure." Civil Code section 1798.81.5.

93.    Defendant is a "business" within the meaning of Civil Code section 1798.80(a).

94.    Plaintiff and Class members are "customer[s]" within the meaning of Civil Code section 1798.80(c) "who provide[d] personal information to [Defendant] for the purpose of purchasing or leasing a product or obtaining a service from the business." Pursuant to Civil Code sections 1798.80(e) and 1798.81.5(d)(1)(C), "personal information" includes, *inter alia*, an individual's name, address, birthdate, and Social Security number.

95.    The breach of the personal data of millions of consumers constituted a "breach of the security system" of Equifax pursuant to Civil Code section 1798.82(g).

96.    By failing to implement and maintain reasonable security procedures and practices to protect Plaintiff and Class Members' PII, Defendant violated Civil Code section 1798.81.5.

97.    In addition, by failing to promptly notify Plaintiff and Class members that their personal information had been acquired (or was reasonably believed to have been acquired) by unauthorized persons in the data breach, Defendant violated Civil Code section 1798.82 of the same title.

98.    By violating Civil Code sections 1798.81.5 and 1798.82, Equifax may be enjoined under Civil Code section 1798.84(e).

99.    Accordingly, Plaintiff request that the Court enter an injunction requiring Equifax to implement and maintain reasonable security procedures to protect PII/PHI in compliance with the CRA, including, but not limited to: (1) ordering that Equifax, consistent with industry standard practices, engage third

party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis; (2) ordering that Defendant engage third party security auditors and internal personnel, consistent with industry standard practices to run automated security monitoring; (3) ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures; (4) ordering that Equifax, consistent with industry standard practices, conduct regular database scanning and securing checks; (5) ordering that Equifax consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; (6) ordering Equifax to meaningfully educate the people about whom it maintains personal information about the threats they face as a result of the loss of their personal information to third parties, as well as steps they must take to protect themselves; and (7) ordering Equifax to encrypt sensitive personal and PII.

100.   Plaintiff further requests that the Court require Equifax to: (1) identify and notify all members of the proposed Class who have not yet been informed of the Data Breach; and (2) to notify affected persons of any future data breaches by email within 24 hours of Defendant's discovery of a breach or possible breach and by mail within 72 hours.

101.   As a result of Defendant's violation of Civil Code sections 1798.81.5 and 1798.82, Plaintiff and the Class will and have incurred economic damages relating to time and money spent remedying the breach, including but not limited to, tax fraud, new financial account fraud, and costs of credit monitoring, credit freezes, and credit reports.

102.   Plaintiff, individually and on behalf of the proposed Class, seek all remedies available under Civil Code section 1798.84, including, but not limited to: (a) damages suffered by members of the proposed Class; and (b) equitable relief.

103.   Plaintiff, individually and on behalf of the Class, also seek reasonable attorneys' fees and costs under applicable law, including California Code of Civil Procedure section 1021.5.

## COUNT SIX

**VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW**
**California Business and Professions Code Section 17200, *et seq.* ("UCL")**

104.   Plaintiff incorporate the above allegations as if fully set forth herein.

105.   The California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.*, prohibits any "unlawful," "fraudulent" or "unfair" business act or practice and any false or misleading advertising, as those terms are defined by the UCL and relevant case law.  By virtue of its above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the Data Breach, Defendant engaged in unlawful and unfair practices within the meaning, and in violation of, the UCL.

106.   In the course of conducting its business, Defendant committed "unlawful" business practices by, *inter alia*, knowingly failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit appropriate data security processes, controls, policies, procedures, protocols, and systems to safeguard and protect Plaintiff' and Class members' PII, and violating the statutory and common law alleged herein in the process, and including, *inter alia,* California's Customer Records Act (Cal. Civ. Code § 1798.80, *et seq.*), California's UCL, the Gramm-Leach -Bliley Act, 15 U.S.C. § 6801 *et seq.*

("GLBA") and common law negligence. Plaintiff and Class Members reserve the right to allege other violations of law by Equifax constituting other unlawful business acts or practices. Equifax's above-described wrongful actions, inaction, omissions, and want of ordinary care are ongoing and continue to this date.

107. Equifax's above-described wrongful actions, inaction, omissions, want of ordinary care, misrepresentations, practices, and non-disclosures also constitute "unfair" business acts and practices in violation of the UCL in that Equifax's wrongful conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous. California has a well-defined public policy embodied by various state statutes, including the California's Customer Records Act and Information Practices Act to ensure that businesses that maintain customer and patient PII implement and maintain reasonable security procedure and practices to protect the personal information from unauthorized access, destruction, use, modification or disclosure. In enacting the Customer Records Act, the Legislature stated that: "[i]dentity theft is costly to the marketplace and to consumers" and that "victims of identity theft must act quickly to minimize the damage; therefore expeditious notification of possible misuse of a person's personal information is imperative." 2002 Cal. Legis. Serv. Ch. 1054 (A.B. 700) (WEST). The gravity of Defendant's wrongful conduct outweighs any alleged benefits attributable to such conduct. There were reasonably available alternatives to further Equifax's legitimate business interests other than engaging in the above-described wrongful conduct.

108. Equifax had exclusive knowledge of material information regarding its deficient security policies and practices, and regarding the security of the personal information of Plaintiff and Class Members. Equifax also had exclusive knowledge concerning the measures, or lack thereof, that Defendant took in response to the prior cyber-attacks and data breaches targeting Equifax.

109.    Defendant also had exclusive knowledge about the extent of the Data Breach, including during the days and months following the Data Breach.

110.    Defendant failed to disclose, and actively concealed, the material information it had regarding its deficient security policies and practices, and regarding the security of the personal information of Plaintiff and Class Members. In the days and months following the Data Breach, Equifax failed to disclose, and actively concealed, information that it had regarding the extent and nature of the Data Breach.

111.    Defendant had a duty to disclose the material information that it had because, *inter alia*, it had exclusive knowledge of the information, it actively concealed the information, it made affirmative statements that were inconsistent with the information it did not disclose, and because Defendant was in a fiduciary position vis-à-vis Plaintiff and Class members by virtue of the fact that Defendant collected and maintained their personal information.

112.    California's UCL also prohibits any "fraudulent business act or practice" Equifax's above-described claims, misleading statements, and non-disclosures were false and were likely to deceive the consuming public, including the Plaintiff and Class Members, in violation of the California UCL.

113.    As a direct and proximate result of Equifax's unlawful and unfair business practices as alleged herein, Plaintiff and Class Members have suffered injury in fact.  Plaintiff and the Class have been injured in the form of, *inter alia,* (i) an imminent, immediate and the continuing increased risk of identity theft, and identity fraud, (ii) invasion of privacy, (iii) breach of the confidentiality of their PII, (iv) deprivation of the value of their PII, for which there is a well-established national and international market, and/or (vi) the financial and/or temporal cost of monitoring their credit, monitoring their financial accounts, and mitigating their damages.

114.   Unless restrained and enjoined, Equifax will continue to engage in the above-described wrongful conduct and more data breaches will occur.  Plaintiff, therefore, on behalf of himself, Class members, and the general public, also seeks restitution and an injunction that includes, but is not limited to: (1) ordering that Defendant, consistent with industry standard practices, engage third party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Equifax's systems on a periodic basis; (2) ordering that Equifax engage third party security auditors and internal personnel, consistent with industry standard practices, to run automated security monitoring; (3) ordering that Equifax audit, test, and train its security personnel regarding any new or modified procedures; (4) ordering that Defendant, consistent with industry standard practices, conduct regular database scanning and securing checks; (5) ordering that Equifax, consistent with industry standard practices, periodically conduct internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; (6) ordering Equifax to meaningfully educate its former and current patients about the threats they face as a result of the loss of their personal information to third parties, as well as the steps they must take to protect themselves; and (7) ordering Equifax to encrypt all PII and confidential and sensitive information.

## COUNT SEVEN
## DECLARATORY RELIEF

115.   Plaintiff incorporate the above allegations as if fully set forth herein.

116.   An actual controversy has arisen in the wake of the Data Breach regarding Equifax's duties to safeguard and protect Plaintiff's and Class Members' confidential and sensitive PII.  Defendant's PII security measures were (and

continue to be) woefully inadequate.   Equifax disputes these contentions and contends that its security measures are appropriate.

117.  Due to the massive Data Breach, there is an actual controversy regarding Equifax's duties to protect and safeguard the confidential and sensitive PII, including the PII related to the Plaintiff and Class Members.  The Data Breach demonstrates the Equifax failed and continues to fail to implement sufficient and adequate security measures and safeguards to protect the PII it maintains.  Equifax continues to contend that it took sufficient security measures with respect to the PII on its systems and disputes Plaintiff's' contentions otherwise.

118.  Plaintiff and Class Members have suffered injury and damages as a result of the Data Breach and continue to suffer injuries and additional harm as additional identity and financial theft and fraud occurs, as well as the continued threat that such additional identity and financial theft and fraud will occur.

119.  Plaintiff and Class Members are seeking a judicial determination of their rights and duties, as well as those of Defendant Equifax, and request the Court to enter a judgment declaring, among other things, (i) Equifax owed Plaintiff and Class Members a legal duty to secure and protect their PII and to provide them with prompt and timely notice of the Data Breach; (ii) that Equifax continues to owe Plaintiff and Class Members a legal duty to secure and protect their PII; (iii) that Equifax take whatever steps are necessary to adequately secure and protect the PII that belongs to Plaintiff and Class Members and provide prompt and sufficient notice of any cyber-attacks or data breaches potentially impacting their PII; (iv) that Equifax's breaches of its duties to the Plaintiff and Class Members was the direct and proximate cause of their damages, injuries and/or harm suffered in connection with and as a result of the Data Breach.

## PRAYER FOR RELIEF

WHERFORE, Plaintiff, on behalf of himself and all other persons, consumers, and others similarly situated, pray for judgment as follows:

(a)    Certify this case as a class action, appoint Plaintiff as class representative, and appoint Plaintiff's counsel to represent the Class;

(b)    Award Plaintiff and Class Members appropriate damages, including punitive and exemplary damages;

(c)    Award equitable, injunctive, and declaratory relief as discussed above and as may be appropriate;

(d)    Award all costs, including experts' fees and attorneys' fees, and the costs of prosecuting this action;

(e)    Award pre-judgment and post-judgment interest as prescribed by law; and

(f)    Grant declaratory and further and additional relief as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all issues so triable.

Jeff S. Westerman
California Bar No. 94559
Pro Hac Vice pending

Westerman Law Corp.
1875 Century Park East
Suite 2200
Los Angeles, California 90067
310-698-7450
Jwesterman@jswlegal.com

                                        KEVIN T. MOORE, P.C.

                                        Kevin T. Moore
                                        GA Bar 520036

KEVIN T. MOORE, P.C.
6111 Peachtree Dunwoody Road
Building C, Suite 201
Atlanta, GA 30328
770-396-3622 (office)
770-551-8701 (fax)
ktm@ktmtriallaw.com


## CERTIFICATION

In accordance with Civil Local Rules 5.1C and 7.1D, I hereby certify that this document has been prepared in 14 point, Times New Roman font.